GULF, C. & S. F. RY. CO. v. McKIE.
(No. 6126.)

(Court of Civil Appeals of Texas. Austin. Dec. 10, 1919. Rehearing Denied Jan. 21, 1920.)

1. APPEAL AND ERROR ⬦⟾971(2) — NO ERROR IN PERMITTING WITNESS TO TESTIFY AS TO MARKET VALUE IN ABSENCE OF ABUSE OF DISCRETION.

Action of court in permitting witness to testify as to market value will not be held error on appeal on ground that qualification of witness was not shown, in absence of a showing of abuse of discretion.

2. CARRIERS ⬦⟾94(3)—BURDEN OF PROVING TAKING OF GOODS IN ATTACHMENT UPON CARRIER SUED FOR CONVERSION.

In shipper's action against carrier for conversion where defense was that goods had been taken from carrier under writ of attachment, the burden of establishing such defense was upon carrier.

3. CARRIERS ⬦⟾94(3)—EVIDENCE INSUFFICIENT TO PROVE GOODS ATTACHED SAME AS THOSE SHIPPED BY PLAINTIFF SUING IN CONVERSION.

In shipper's action against carrier for conversion defended upon ground that the goods

had been taken from carrier under writ of attachment, evidence *held* insufficient to prove that the goods taken under attachment were those shipped by plaintiff.

Appeal from McLennan County Court; James P. Alexander, Judge.

Action by B. G. McKie against the Gulf, Colorado & Santa Fé Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Sanford & Harris, of Waco, for appellant. W. L. Eason, of Waco, for appellee.

BRADY, J. This is the second appeal in this cause, the former appeal being reported in 191 S. W. 576. Appellee sued appellant to recover the value of 25 bales of linters delivered to appellant by the agent of appellee at Honey Grove, Tex., for transportation to Lima, Ohio. The shipment was "consigned to shipper's order at Lima, Ohio; notify the Lima Mattress Company." The suit was for conversion; it being alleged that the railway company had converted the property to it own use and benefit, and had failed and refused to deliver the linters, or any part thereof, to appellee or his order.

The principal defenses were the same as on the former trial, and specially that the property was seized under attachment in a justice's court in Lima, Ohio, in a suit by the Lima Mattress Company, taken from the possession of the railway company, and sold under the attachment proceedings; and that therefore appellant was not liable to appellee. The further defense was made that this was an interstate shipment, and that by the terms of the bill of lading no action for the recovery of any claim could be maintained in any court, unless written notice of the claim for loss or damage should have been served upon the local agent of the delivering line, or on the nearest or other convenient local agent of the company, and that appellee failed to give such written notice.

The case was submitted to a jury upon a general charge, and upon a verdict for appellee judgment was entered accordingly.

[1] The first question raised on this appeal is that the trial court erred in permitting the witness Thompson to testify as to the market value of the linters at Lima, Ohio, during the year 1913. This same assignment was presented on the former appeal, and was in effect overruled by the decision of this court. The testimony of Thompson on the present trial was substantially the same as on the first trial of the case, and his qualifying testimony was to the same effect. It is conceded that the question of the qualification of a witness to testify as to market value is largely in the discretion of the trial court, and that its action will not be revised by an appellate court, except where a clear abuse of discretion is shown. We are unable to say that the trial court abused its discretion in admitting the testimony of this witness, and the assignment is therefore overruled.

The next question to be considered is the claim that appellee having sued for the linters in his own name, and the proof disclosing that S. R. Thompson was interested in the 25 bales of linters, a judgment for appellee is erroneous. The court specifically charged the jury that, if they did not find that the appellee was the exclusive owner of the 25 bales of linters in question and the present owner of the claim, they should find for appellant. In view of this instruction, and the verdict of the jury, which is supported by evidence, we hold that there was no error in entering judgment for appellee as to this issue.

It is also contended that appellee was not entitled to recover, because the undisputed evidence showed that the written notice, provided for by the terms of the bill of lading, was not given. Upon this point, also, the court specially charged the jury that, if they did not find that appellee presented his claim in writing for his damages to the railway company within 91 days from the time the claim accrued, they should find for the railway company. There is testimony in the record showing that appellee gave the local agent of appellant written notice of his claim in May, 1913, during which month the delivery to Lima Mattress Company by the Pennsylvania Railway Company, the delivering carrier, was made, and at various other times, including the formal written notice given to appellant on October 8, 1913. During this time appellee was also in communication with appellant's agent, endeavoring to get delivery of the goods, or an adjustment of the matter, and it is undisputed in the evidence that he gave formal written notice of his claim for damages within 91 days after he obtained information that the shipment had been delivered by mistake to Lima Mattress Company, and afterwards redelivered to the railway company. In these circumstances, and in view of the verdict of the jury, we hold that the assignment is without merit.

The last and principal question for determination is the contention that the undisputed evidence shows that the 25 bales of linters in question were taken from the Pennsylvania Railroad, the delivering carrier, by writ of attachment, and that it is therefore not liable to appellee. On the former appeal this court recognized the doctrine that when property received by a common carrier, under a contract of shipment, is taken from the possession of the carrier by an officer acting under judicial process, the liability of the carrier ceases, and it cannot be

held responsible for its failure to deliver the property to the consignee. The court in effect thus charged the jury on the present trial, and specially instructed the jury that if they found the 25 bales of linters taken from the railway company at Lima, Ohio, under attachment, were the identical bales of cotton shipped by appellee under the bill of lading sued upon, they should find for the railway company. This was the precise point on which this case was reversed, and the cause was remanded in order that the identity of the cotton seized by the Ohio constable and that delivered to appellant for shipment might be determined, and the case upon that issue more fully developed. The court below charged the jury that the burden of proof was upon the railway company to show that the linters in question were taken from the railway company, under writ of attachment; in other words, to show the identity of the cotton seized and the cotton shipped.

[2] While objection was made below to this feature of the charge, there is no assignment in the brief questioning its correctness. For this reason, as well as because, it being purely a defensive matter, the burden of establishing the defense was by law upon appellant, the verdict of the jury should not be disturbed, if appellant failed to discharge this burden by the undisputed evidence or by the overwhelming weight of the testimony.

The testimony on this pivotal question was quite meager. The treasurer of the Lima Mattress Company, who was cashier in 1913, testified by deposition; but he seemed to know nothing about the transaction in question. Mr. Crooks, the agent of the Pennsylvania Railway Company, testified by deposition that the 25 bales of linters were delivered to the Lima Mattress Company on May 12, 1913, by mistake, due to the fact that there were two shipments, each of 25 bales of linters, billed to the mattress company, which had been consolidated into one shipment, without the knowledge of the delivering carrier; and that the delivery of the 25 bales in question was made without surrender of the bill of lading, because it was supposed that the car contained only the 25 bales of linters, for which the mattress company had a bill of lading, instead of 50 bales, as subsequently developed. This delivery was made May 12, 1913, and later the mistake was discovered, and about August 1, 1913, the mattress company returned 25 out of the 50 bales of linters, to the Pennsylvania Railroad, but he did not testify that they were the identical 25 bales of linters shipped by appellee involved in this suit. The substance of his testimony on this point consists purely of the hearsay statements from the agents of the Lima Mattress Company.

[3] Mr. Bernstein, president and treasurer of the Lima Mattress Company during the year 1913, also testified by deposition. The substance of his testimony is that when it was discovered that the car delivered to the mattress company contained 50 bales instead of 25, as called for by the bill of lading for that car, he returned 25 bales out of the 50 to the Pennsylvania Railroad. He was asked to describe in detail the 25 bales of linters returned to the railroad company, the tag numbers, weights, and any other marks of identification. The sole fact or circumstance of identification testified to by him was that the 25 bales returned out of the 50 conformed to the weight that should have been contained in the second car. He could not give the tag numbers, and kept no record of them, but stated that the tags were attached to the bales, and were left that way, but he did not identify the cotton returned as the 25 bales covered by the shipment in question. He did not testify that in the segregation the 25 bales in the first car, for which the mattress company had a bill of lading, were separated from the other 25 bales, and the remainder returned to the Pennsylvania Railroad; nor that the 25 bales covered by its bill of lading were untagged; nor, if tagged, that the tags on the bales which the company retained corresponded to the tags covered by the bill of lading for that shipment. In other words, his testimony is consistent with the theory that he simply picked out 25 bales out of the 50, conforming in aggregate weight to the 25 bales shipped by appellee, under shipper's order, and the proof wholly fails to show the identity of the cotton. In this state of the evidence, we are not warranted in disturbing the verdict of the jury.

All assignments have been carefully considered, are overruled, and the case will be affirmed.

Affirmed.